**E-Filed July 1, 2008 **

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BARBARA ZOTO,<br><br>                  Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                  Defendant. | Case Number 07-02972 JF<br>ORDER[1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING TO THE SOCIAL SECURITY ADMINISTRATION<br><br>[re: docket no. 12] |

Plaintiff Barbara Zoto ("Zoto") filed the instant motion for summary judgment on November 6, 2007, seeking reversal or remand with respect to Defendant's decision to deny her application for Supplemental Security Income benefits under Title XVI of the Social Security Act. Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), filed a cross-motion for summary judgment on December 6, 2007. The matter has been submitted for decision without oral argument. For the reasons discussed below, Zoto's motion will be

---

[1] This disposition is not designated for publication in the official reporter.

1    DENIED; the Commissioner's motion will be GRANTED IN PART AND DENIED IN PART;

2    and the case will be REMANDED to the Social Security Administration for further proceedings

3    consistent with this order.

4                                      **I. BACKGROUND**

5           The following facts are taken from the decision of the Administrative Law Judge ("ALJ")

6    dated August 1, 2007, and the accompanying administrative record.  Zoto is forty-seven years

7    old.  A.R. 70.  She completed the eleventh grade and has work experience as a retail store cashier

8    and a restaurant custodian.  *Id*. at 86-90.  Zoto alleges that she became disabled on December 31,

9    2002 and has been unable to work because of depression, paranoia, anxiety, panic attacks,

10   hypertension, asthma, severe back pain, and back and knee injuries.[2]  *Id*. at 134-35.  Her

11   application initially was denied on July 22, 2003, *id*. at 49, and was denied again after

12   reconsideration on February 4, 2005, *id*. at 59.  Pursuant to Zoto's request, the ALJ held an

13   administrative hearing on April 25, 2006.  *Id*. at 597.  Zoto was represented by an attorney and

14   testified at the hearing.  *Id*. at 598.

15          After reviewing all the evidence, the ALJ found that Zoto is not disabled within the

16   meaning of the Social Security Act § 1614(a)(3)(A), and thus is not entitled to disability benefits.

17   *Id*. at 15.  Specifically, the ALJ found that Zoto had not engaged in substantial gainful activity at

18   any time relevant to the decision.  *Id*. at 19.  Further, although the ALJ found that Zoto's

19   depression, cocaine dependence (in remission by report), asthma, and cervical and lumbar muscle

20   strains were "severe" within the meaning of 20 C.F.R. § 416.920(c), her medical impairment did

21   not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

22   Appendix 1.  *Id*.  The ALJ gave little weight to the opinions of Zoto's treating psychiatrist, Dr.

23   Natividad, finding them to be inconsistent with the record as a whole and reflecting a biased

24   _____

25          [2] In multiple documents, Zoto maintains that she became disabled on December 31, 2002.
26   However, she also asserts that she has been out of work as a result of her disability since October
     22, 2001.  *See* A.R. 34-35.  The Court need not resolve the discrepancy here, but the Social
27   Security Administration may wish to do so on remand.

28                                              2
     Case No. C 07-02972 JF (HRL)
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND
     DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING
     TO THE SOCIAL SECURITY ADMINISTRATION
     (JFEX1)

1   advocacy for Zoto. *Id.* at 23-24. The ALJ also found that there were inconsistencies between

2   Zoto's testimony and the diagnostic tests and medical findings in the record. *Id.* The ALJ noted,

3   for example, that Zoto alleged "excruciating back pain," but that her condition required only

4   routine treatment. *Id.* Similar inconsistencies were noted with respect to Zoto's mental health

5   issues. *Id.* The ALJ also found that Zoto "put forth minimal effort in her recovery." *Id.*

6   Accordingly, the ALJ discredited Zoto's testimony as to the intensity, persistence and limiting

7   effects of her symptoms on the basis that the testimony was not well supported by the probative

8   evidence of the record as a whole. *Id.* at 24-25. Finally, the ALJ considered but gave little

9   weight to the third-party statements of Zoto's family and friends. *Id.* at 25.

10       The ALJ found that Zoto has the residual functional capacity ("RFC")[3] to lift and carry

11   twenty-five pounds frequently and fifty pounds occasionally; to sit, stand and/or walk for six

12   hours of an eight hour work day; and to perform simple repetitive tasks. *Id.* at 25. The ALJ did

13   find that Zoto's asthma requires her to avoid concentrated exposure to fumes, odors, dusts, gases,

14   and poor ventilation. *Id.* Considering Zoto's RFC, age, education and work experience, the ALJ

15   concluded pursuant to 20 C.F.R. 426.960(c) and 416.966 that jobs that Zoto could perform exist

16   in significant numbers in the national economy. *Id.* at 26.

17       In June 2006, Zoto requested an administrative review of the ALJ's decision by the

18   Appeals Council. That request was denied on April 3, 2007, and the ALJ's decision thus became

19   final. Zoto thereafter commenced the instant action.

## II. LEGAL STANDARD

20

21   **A.     Standard for Reviewing the Commissioner's Decision**

22       Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the

23   Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only

24   if it is not supported by substantial evidence or is based on the application of improper legal

25   _____

26       [3] A claimant's residual functional capacity is what she can still do despite existing
     exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir.
27   1989).

28                                              3

1  standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d

2  1255, 1257 (9th Cir. 1992). In this context, the term "substantial evidence" means "more than a

3  mere scintilla but less than a preponderance- it is such relevant evidence that a reasonable mind

4  might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin*,

5  966 F.2d at 1257. When determining whether substantial evidence exists to support the

6  Commissioner's decision, the Court examines the administrative record as a whole, considering

7  adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d

8  498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation,

9  the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*,

10  966 F.2d at 1258.

11  **B.    Standard for Determining Disability**

12     A person is "disabled" for the purposes of receiving Social Security benefits if she is

13  unable to engage in any substantial gainful activity as a result of physical or mental impairment

14  that has lasted or is expected to last for a continuous period of at least twelve months or is

15  expected to result in death. 42 U.S.C. § 423(d)(1)(A). The Commissioner follows a five-step

16  sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920.

17     In the first step, the Commissioner must determine whether the claimant currently is

18  engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.

19  *Id*. If the claimant is not currently engaged in substantial gainful activity, the second step

20  requires the Commissioner to determine whether the claimant has a "severe" impairment or

21  combination of impairments which significantly limits the claimant's ability to do basic work

22  activities; if not, a finding of "not disabled" is made and the claim is denied. *Id*. If the claimant

23  has a "severe" impairment or combination of impairments, the third step requires the

24  Commissioner to determine whether the impairment or combination or impairments meets or

25  equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are

26  awarded. *Id*. If the claimant's impairment or combination of impairments does not meet or

27  equal an impairment in the Listing, the fourth step requires the Commissioner to determine

28                                                      4

1   whether the claimant has sufficient "residual functioning capacity" ("RFC") to perform his or her

2   past work; if so, the claimant is not disabled and the claim is denied. *Id.* The claimant has the

3   burden of proving that she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If

4   the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner

5   then bears the burden of establishing that the claimant can perform other substantial gainful

6   work; the determination of this issue comprises of the fifth and final step in the sequential

7   analysis. 20 C.F.R. 20 § 416.920; *Drouin*, 966 F.2d at 1257.

8   ### III.  DISCUSSION

9           Zoto asserts several challenges to the ALJ's decision. First, she argues that the ALJ's

10  assessment of her physical RFC was not supported by substantial evidence. Second, she

11  contends that the ALJ improperly assessed her mental RFC by rejecting the opinion of Dr.

12  Natividad. Third, she asserts that the ALJ improperly discounted her symptom reporting

13  testimony and the third-party statements. Finally, she argues that the ALJ did not establish that

14  she can perform other substantial gainful work as required under step five of the sequential

15  analysis.

16  **A.    ALJ's Assessment of Zoto's Residual Functioning Capacity**

17          Zoto contends that the ALJ improperly assessed her RFC and thereby incorrectly found

18  that she is not disabled. The claimant bears the initial burden of establishing disability by

19  showing that a physical or mental impairment prevents her from engaging in any of her previous

20  occupations. *Sanchez v. Sec'y of HHS*, 812 F.2d 509, 511 (9th Cir. 1989); *Allen v. Sec'y of HHS*,

21  726 F.2d 1470, 1472 (9th Cir. 1984). In assessing a claimant's medical reports, the ALJ must

22  assess all evidence, including the claimant's medical reports, to determine what capacity the

23  claimant has for work despite her impairment(s). 20 C.F.R. § 404.1545(a). The ALJ may

24  resolve disputes in contradicted medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

25  Cir. 1989); *Vincent ex rel. Vincent v. Keckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

26          Here, the ALJ considered all of the medical evidence in the record before determining

27  that Zoto has the RFC to do medium exertion work. Zoto argues that the ALJ misinterpreted the

28
5

Case No. C 07-02972 JF (HRL)
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND
DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING
TO THE SOCIAL SECURITY ADMINISTRATION
(JFEX1)

1  expert testimony of Dr. C. E. Gable and contends that Dr. Gable's examination reports of June

2  2003 and June 2004 indicate an ability to perform only light exertion work.  Pursuant to 20

3  C.F.R. § 416.967(c), "medium exertion" work consists of frequently lifting or carrying twenty-

4  five pounds and occasionally lifting fifty pounds.  While Dr. Gable's 2003 report does not

5  address Zoto's capacity to do such work, his 2004 report specifically notes she would be able to

6  "lift 25 pounds on a regular basis and 50 pounds occasionally."  A.R. at 286.  Zoto contends that

7  Dr. Gable's findings in 2004 were "conditional or even speculative" because the doctor also

8  noted her apparent back spasms.  *See* Brief of Plaintiff at 4, Zoto v. Astrue, No. 07-2972 JF (N.D.

9  Cal. Nov. 6, 2007).  However, the ALJ discredited Zoto's claim of back spasms when discussing

10  Zoto's inconsistent testimony and overall lack of credibility.  A.R. at 24.  This Court will not

11  reverse reasonable credibility determinations of an ALJ.  *See Johnson v. Shalala*, 60 F.3d 1428,

12  1433-34 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

13          There is additional evidence in the record that supports a finding of medium exertion

14  capacity.  For example, Zoto's primary physician, Dr. Lin, found in February 2006 that there was

15  no evidence of back impairment beyond "mild arthritis."  A.R. 577.  Dr. John Chokatos, a state

16  agency doctor, also found Zoto capable of medium exertion work in June, 2004.  A.R. at 310.

17  The Ninth Circuit previously has held that, "[o]pinions of a nonexamining, testifying medical

18  advisor may serve as substantial evidence when they are supported by other evidence in the

19  record and are consistent with it."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600

20  (9th Cir. 1999); *see also Andrews v. Shala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Chokatos's

21  evaluation serves as such substantial evidence here.

22          Zoto also contends that the May 2005 evaluation by her physical therapist, Deanne Smith,

23  supports an RFC of light exertion work.  A.R. at 432.  Zoto argues that the ALJ incorrectly gave

24  Smith's report less weight in light of recent changes to Social Security Rules that greatly reduced

25  the distinction between the testimony of medical witnesses and other treating practitioners such

26  as physical therapists.  *See* SSR 06-03p.  However, even if the ALJ had accorded equal weight to

27  Smith's testimony, Smith's findings are contradictory to the majority of the other evidence in the

28                                                          6

1   record.  Accordingly, the Court finds and concludes that Zoto's arguments on the physical

2   aspects of the RFC are without merit.  The ALJ's assessment of Zoto's physical capabilities is

3   supported by substantial evidence.

4           The ALJ's assessment of Zoto's mental capabilities also is supported by substantial

5   evidence.  Zoto claims that the ALJ misinterpreted evidence tending to show that she has

6   extensive limitations, while discussing only those reports that support a finding of mild to

7   moderate limitations.  *See* Plaintiff's brief at 6.  In fact, all of the psychiatric evidence in the

8   record, apart from the discredited reports of Dr. Natividad (discussed below), supports a finding

9   of mild to moderate limitations in mental capacity.  *See* A.R. at 242-43, 291-93, 305, 562-69.

10  Several of these reports were submitted by Disability Determination Service psychiatrists, whose

11  opinions "may serve as substantial evidence when they are supported by other evidence in the

12  record and are consistent with it."  *See  Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

13  595, 600 (9th Cir. 1999); *see also Andrews v. Shala*, 53 F.3d 1035, 1041 (9th Cir. 1995).   The

14  ALJ's conclusion that Zoto is capable of performing "simple, repetitive tasks that do not require

15  frequent contact with the supervisors, coworkers, and the public" is consistent with mild to

16  moderate limitations.  *See* A.R. at 242-43, 291-93, 305, 562-69.

17          Zoto's additional argument that her work history and education evidence extensive

18  limitations of her mental capacity also is without support in the record.  Even though a pregnancy

19  prevented Zoto from completing her high school education, two intelligence evaluations reflect

20  that Zoto is of low average range intelligence and has only mild to moderate limitations of her

21  mental capability.  *See id.* at 242, 565.  Zoto's poor history in positions of extensive interaction

22  with the public does not evidence an inability to perform the limited interaction positions

23  recommended by the ALJ.  *See id.* at 602-03.  The ALJ's finding with respect to Zoto's mental

24  RFC was an accurate and reasonable assessment of her capabilities and is supported by

25  substantial evidence.

26  **B.     ALJ's Evaluation of the Testimony of Dr. Natividad and Third-Party Witnesses**

27          Zoto next contends that the ALJ impermissibly discounted the credibility of her treating

28                                                  7
    Case No. C 07-02972 JF (HRL)
    ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND
    DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING
    TO THE SOCIAL SECURITY ADMINISTRATION
    (JFEX1)

1   psychiatrist, Dr. Natividad, as well as her third-party witnesses.  Greater weight usually is given

2   to the opinion of a treating physician.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

3   1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  However,

4   a treating physician's opinion is not always binding; rather, "the ALJ must give specific,

5   legitimate reasons" for disregarding a treating physician's opinion.  *Id.*  Here, the ALJ expressly

6   considered Dr. Natividad's opinions, properly compared them to the other medical testimony in

7   the record and adequately explained his basis for according the opinions little weight.  The ALJ

8   noted that Dr. Natividad's opinion was "guided" in favor of Zoto, and that questionnaires used in

9   treatment were provided by Zoto's attorney.  A.R. at 24.  The ALJ also observed that Dr.

10  Natividad's "opinions appear reflective of a position of 'advocate' for the patient."  *Id.; see also*

11  *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (ALJ may reject treating physician's

12  advocating report as untrustworthy).  The ALJ discussed specifically the discrepancies between

13  the findings in Dr. Natividad's report and the routine group therapy Dr. Natividad recommended.

14      Zoto contends that her financial situation required routine asthma treatments rather than

15  more aggressive treatment; however, the asthma treatments are completely unrelated to the

16  cognitive therapy group sessions recommended by Dr. Natividad.  Even if the same financial

17  limitations prevented her from seeking further cognitive therapy, Zoto still misunderstands the

18  ALJ's conclusion, which is that Dr. Natividad himself did not believe that Zoto's condition

19  warranted anything more than routine group therapy.  Based on this reasoning, the ALJ

20  permissively inferred that Zoto's mental impairments were not serious enough to prevent her

21  from finding work.  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (logical inferences

22  may be drawn from the evidence).  The ALJ provided sufficient legitimate and specific reasons

23  for discrediting Dr. Natividad's opinions.

24      Zoto also contends that the ALJ impermissibly discredited the testimony of her family

25  and friends as third-party witnesses to her symptoms.  The controlling regulations permit an ALJ

26  to consider testimony of family and friends as lay witnesses but do not require the ALJ to

27  articulate specific reasons for rejecting or discrediting such testimony.  *See* 20 C.F.R. §

28                                          8

1   416.913(d)(4) (stating that an ALJ "*may* also use evidence from other sources to show the

2   severity [of a claimant's] impairment(s)" (emphasis added)); *see Vincent v. Heckler*, 739 F.2d

3   1393, 1395 (9th Cir. 1984). Zoto argues pursuant to *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

4   Cir. 1996), that the ALJ was required to consider these third-party statements and provide

5   specific reasons in the report if discrediting the opinions. The ALJ's decision, however, notes

6   that the ALJ "reviewed and [gave] full consideration to these reports by friends and/or family."

7   A.R. at 25. The ALJ explained specifically that these lay opinions were not sufficient to

8   overcome the significant amount of medical testimony available. A.R. 25.

9   **C.    ALJ's Evaluation of Zoto's Testimony**

10        Zoto asserts that the ALJ committed legal error in discounting her personal testimony and

11   in finding that her complaints were "not wholly credible." A.R. at 25. Zoto points out that the

12   ALJ must provide "clear and convincing" reasons for discrediting symptom reporting absent

13   evidence of malingering. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296

14   (9th Cir. 1999). Here, however, several of the medical reports in the record did evidence

15   possible malingering. For example, Dr. Gable's skepticism with respect to Zoto's self-reporting

16   is clear in his June 2003 evaluation, which notes that Dr. Gable did not observe any muscle

17   spasm that could have produced Zoto's "supposedly" excruciating pain. A.R. at 245.

18        Moreover, despite this record evidence of malingering, the ALJ did provide "clear and

19   convincing" reasons for discrediting Zoto's testimony, including the discrepancies between

20   Zoto's testimony and other evidence. Under Ninth Circuit authority, an ALJ may consider

21   discrepancies between a claimant's subjective claims and objective medical records in evaluating

22   the credibility of testimony. *Morgan*, 169 F.3d at 600. Here, the ALJ discussed the

23   discrepancies between Zoto's reported symptoms and the results of her diagnostic tests. A.R. at

24   24. Evidence of conservative treatment also is a legitimate reason to discredit a claimant's claim

25   of subjective pain. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th 2007). Here, the ALJ discussed

26   at length the discrepancies between the levels of pain and impairment reported by Zoto and the

27   "very routine" physical and mental health treatments recommended by Zoto's physicians. A.R.

28

9

1  at 24.

2  　　　The ALJ also clearly and convincingly weighed other indications that Zoto lacked

3  credibility.  An ALJ may consider "unexplained, or inadequately explained, failure to seek

4  treatment or follow a prescribed course of treatment" as part of a credibility determination.  *See*

5  *Bunnel v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*).  Here, the ALJ observed that

6  Zoto appeared to "put forth minimal effort in her recovery, including minimal cooperation during

7  more than one round of physical therapy."  A.R. at 24; *see id* at 502, 507, 511, 578, 580, 582.

8  *Bunnel* also permits application of  "ordinary techniques of credibility evaluation."  947 F.2d at

9  345-46.  Here, the ALJ considered Zoto's inconsistent testimony regarding her drug use,

10  specifically noting that notwithstanding Zoto's statement that she had been "clean" since 2003,

11  her child was born intoxicated in 2004, and she missed two court ordered drug screenings in

12  2005.  A.R. at 21, 24, 371, 498.

13  　　　Zoto claims that the ALJ failed to discuss other evidence that supported her credibility,

14  such as the consistency between her written and oral testimony and Dr. Natividad's opinion that

15  Zoto seemed "honest."  *Id.* at 430.  Zoto relies on non-binding case law suggesting that where

16  evidence is discounted without comment, the ALJ may have been negligent in dismissing such

17  evidence.  However, neither 20 C.F.R. § 416.929 nor SSR 96-7p require the ALJ to discuss *each*

18  item of evidence considered in formulating a decision.  Having reviewed the entire record, the

19  Court is satisfied that the ALJ conducted a thorough and appropriate assessment of Zoto's

20  credibility.  *See Burch v. Barnhart*, 400 F.3d 678, 681 (9th Cir. 2005).

21  **D.　　ALJ's Finding of "Not Disabled"**

22  　　　The ALJ having found that Zoto had no past relevant work, the burden shifted to the

23  Commissioner under the fifth step of analysis to produce evidence that there were a significant

24  number of jobs in the economy that Zoto could perform.  20 C.F.R. 20 § 416.920; *Drouin*, 966

25  F.2d at 1257.  Pursuant to *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999), Zoto argues that

26  the ALJ's finding of "not disabled" was incorrectly based on the use of "grids" alone.  However,

27  "the fact that a nonexertional limitation is alleged does not automatically preclude application of

28  　　　　　　　　　　　　　　　　　　　　10

1    the grids." *Desrosiers v. Sec'y of HHS*, 846 F.2d 573, 577 (9th Cir. 1988).  In determining

2    whether a nonexertional limitation precludes reliance on the grids, the ALJ "should first

3    determine if a claimant's nonexertional limitations significantly limit the range of work permitted

4    by his exertional limitations." *Id.*

5         In the instant case, Zoto's  nonexertional limitations as found by the ALJ were: (1) a

6    limitation to simple, repetitive work; (2) a prohibition against concentrated exposure to fumes,

7    odors, dusts, gases, and poor ventilation; and (3) a limitation to work that does not require

8    frequent contact with supervisors, co-workers or the public.  A.R. at 25.  Though the ALJ

9    concluded that these nonexertional limitations "have little or no effect on the occupational base

10   of unskilled medium work," the record does not provide any support for his finding.  *Id.* at 26.

11   The Ninth Circuit previously has held that "remand for further administrative proceedings is

12   appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587,

13   593 (9th Cir. 2004).  Given that a vocational expert was not consulted in the instant case, this

14   Court finds that remand is appropriate with respect to this one issue.

15                                  **IV.  ORDER**

16         Good cause therefor appearing, IT IS HEREBY ORDERED that Zoto's motion for

17   summary judgment is DENIED; the Commissioner's motion for summary judgment is

18   GRANTED IN PART and DENIED IN PART, and the instant case is REMANDED to the Social

19   Security Administration for further proceedings consistent with this order.

20

21   DATED: July 1, 2008

22

23                                        _____
                                          JEREMY FOGEL
24                                        United States District Judge

25

26

27

28
                                        11

1   This Order has been served upon the following persons:

2   James Hunt Miller
    Email: jim_miller0@yahoo.com

3
    Theophous H Reagans, Jr.
4   Email: theophous.reagans@ssa.gov

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12